<u>PUBLISH</u>

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA



Filed / Docketed
December 27, 2007

| | |
|---|---|
| IN RE: | ) |
| | ) |
| KENDALL, JON H. and | )   Case No. 07-10800-R |
| KENDALL, PETRA A., | )   Chapter 13 |

<u>MEMORANDUM OPINION</u>

Before the Court is the Debtors' Objection to Proof of Claim Number 9 Filed by B-Real, LLC and Notice of Opportunity for Hearing ("Objection") (Doc.26) filed by the Debtors Jon H. and Petra A. Kendall (the "Kendalls") on July 17, 2007; B-Real, LLC's Response in Opposition to Debtors' Objection to Claim Number Nine (9) ("Response") (Doc. 33), filed by B-Real, LLC ("B-Real") on August 17, 2007; Brief in Support of Debtors' Objection to Proof of Claim Filed by B-Real, L.L.C., and Reply to B-Real, L.L.C.'s Response in Opposition to Debtor's [sic] Objection to Proof of Claim ("Reply") (Doc. 36), filed by the Kendalls on August 20, 2007; and B-Real, LLC's Supplemental Brief in Opposition to Debtors' Objection to Claim Number Nine (9) ("Supplemental Brief") (Doc. 38), filed by B-Real on August 31, 2007. An evidentiary hearing was held on September 26, 2007, after which the Court took the matter under advisement.

**I.   Jurisdiction**

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334, 157(a), and 157(b)(2)(A), (B) and (O); and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

**II.     Contentions of the parties**

The Kendalls object to Proof of Claim No. 9 filed by B-Real on July 13, 2007 (the "Proof of Claim"), because they contend that they are not indebted to B-Real. The Kendalls further assert that because B-Real failed to attach documentary support to its Proof of Claim as required by Bankruptcy Rule 3001(c), the Proof of Claim was not "executed and filed in accordance with" Rule 3001(c) and therefore does not constitute *prima facie* evidence of the existence and amount of B-Real's claim under Bankruptcy Rule 3001(f). Thus, the Kendalls contend that B-Real has the burden of proving the validity of its claim, including ownership, validity, and amount of the claim.

B-Real contends that (1) failing to submit documentation with a proof of claim is not grounds for disallowing a claim; (2) on their schedules, the Kendalls listed Chase Bank USA, N.A., as a creditor in the amount of the Proof of Claim, and B-Real is the only creditor that filed a claim for that amount; (3) B-Real filed its Proof of Claim under penalty of perjury and made an offer of proof that B-Real is an assignee of the Chase debt; and (4) these facts are sufficient to satisfy B-Real's initial burden of proving the existence and amount of its claim. Thus, B-Real argues, the Kendalls had the burden of coming forward with evidence that they do not owe the debt set forth in the Proof of Claim to B-Real, and argue that the Kendalls failed to meet that burden.

**III.    Findings of fact**

On April 27, 2007, the Kendalls filed their voluntary petition seeking relief under Chapter 13 of the Bankruptcy Code. Among the debts listed on their Schedule F, the Kendalls

scheduled as "disputed" an unsecured debt owed by Mr. Kendall to Chase Bank USA, N.A. ("Chase"), account number xxxxxxxxxxxx0038/6210552,[1] in the amount of $13,193.00 for "Credit Card Purchases" incurred in 1999 (the "Chase Debt"). Exhibit 1-2. Neither Chase nor any other claimant filed a proof of claim in the amount of the Chase Debt.

On or about June 26, 2007, B-Real filed its Proof of Claim on Official Form 10. In the Proof of Claim, B-Real asserted that Mr. Kendall owed B-Real non-priority unsecured credit card debt in the amount of $13,193.00. In Paragraph 2 of Form 10, entitled "Date debt was incurred," B-Real stated "Charges made Prior to Filing." In Paragraph 5 of Form 10, which states "[c]heck this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges," B-Real did not check the statement and did not attach an itemized statement of interest or charges. Thus, B-Real represented (under penalty of criminal penalties) that none of the $13,193.00 claim was for interest or other charges. Paragraph 7 of the Proof of Claim states: "Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. . . . If the documents are not available, explain. If the documents are voluminous, attach a summary." Attached to the Proof of Claim was a one page document entitled "Account Summary" which contained Mr. Kendall's name, address, last four digits of his Social Security number, his counsel's name and address, the case number and chapter, the amount of the Chase Debt and the last four

---

[1] The schedules contained the full account number.

3

digits of the Chase Debt account number. Account Summary, Exhibit 2-2. This information is contained in the Kendalls' schedules. The only information provided in the Account Summary that was not contained in the schedules is the alleged account "Open Date" of June 7, 1999, and the alleged "Charge Off Date" of October 31, 2006. The Account Summary includes fields for "Last Payment Date," "Last Payment Amount," "Last Purchase Date," and "Last Purchase Amount," but those fields are blank. The Account Summary does not explain why a credit card contract or itemized statements for transactions on the credit card account are not available, and does not allege that the relevant documents are too voluminous to attach. The Proof of Claim was signed by Steven G. Kane, as "Authorized Agent for B-Real, LLC."

At the hearing, the parties stipulated to the admission of six exhibits. Prior to the hearing, Mr. Kendall had requested that B-Real produce all documents in its possession that established that B-Real was the "holder in due course of any debt owed by" the Kendalls, and produce detailed payment histories regarding debits and credits to the account from the date the loan was originated to the date of the request. Exhibit 6 (First Request for Production of Documents, First Set of Interrogatories, and Request for Accounting ("Request for Documents and Accounting")). In response, B-Real produced three documents, which were admitted as Exhibits 3, 4 and 5.

Exhibit 3 purports to be a Bill of Sale of 2,875 "Chapter 7 Receivables" from Chase Manhattan Bank USA, N.A. to B-Line, LLC ("B-Line"), and its successors and assigns, pursuant to a "Confidential Agreement for the Quarterly Sale and Purchase of Chapter 7

4

Bankruptcy Receivables" dated January 1, 2006.  Exhibit 3 ("Bill of Sale").  The sale, effective as of April 24, 2006, was of "certain receivables, judgments or evidences of debt described in Exhibit '1' attached hereto and made part hereof for all purposes."  Bill of Sale.  No Exhibit "1" was attached to the Bill of Sale produced to the Kendalls and introduced into evidence.  The Bill of Sale does not in any manner establish (or even suggest) that the Chase Debt was included in the 2,875 accounts assigned to B-Line.

Exhibit 4 purports to be an Assignment of Accounts and Waiver of Notice of Transfer of Claims ("Assignment"), in which B-Line apparently sold, assigned, transferred and conveyed to B-Real all of its interest in "Receivables (as defined in the Receivables Purchase Agreement, dated as [sic] May 23, 2007, between Seller and Buyer (the 'Agreement') acquired by Seller and described on the attached Schedule A hereto, all rights of Seller under the Purchase Agreement (as defined in the Agreement) with respect to such Receivables . . . and all claims including 'claims' within the meaning of Section 101(5) of Title 11 of the U.S. Code)."  The Schedule A referred to in the Assignment was not attached to the Assignment produced to the Kendalls and introduced into evidence.  Thus, the Assignment, too, fails to identify any particular "receivable" transferred by B-Line to B-Real.

Exhibit 5, which was produced by B-Real to the Kendalls, is a printout of a webpage dated September 11, 2007, which purports to be a "bWeb Account Summary" that contains various pieces of information relating to Mr. Kendall, his bankruptcy, and the Chase Debt.  B-Real did not present a witness to testify as to how this information was acquired by B-Real, but the Court takes judicial notice that most of the information contained in the bWeb

5

Account Summary could be gleaned from publicly available documents filed in the Kendalls' bankruptcy case and as well as from credit reporting agencies. The fact that B-Real produced this document is not sufficient to establish that B-Real is in fact the assignee of the Chase Debt.

In response to the Request for Documents and Accounting, B-Real did not produce to the Kendalls any document showing how the debt listed on the Proof of Claim was calculated (*i.e.*, dates and amounts of charges, dates and amounts of payments, interest accruals and rates, penalties, etc.), and B-Real did not produce any evidence regarding the components of the alleged debt at the hearing.

Mr. Kendall testified at the hearing, and the Court finds his testimony credible. Mr. Kendall stated that he had never heard of B-Real or transacted business with B-Real, and that he did not receive notice or any indication from Chase that it had sold and transferred the Chase Debt. He admitted that he owed some credit card debt to Chase, but disputed the amount billed by Chase. Mr. Kendall's dispute arose sometime prepetition, when Chase purchased the account from Providian Bank. Mr. Kendall testified that at the time the debt was sold by Providian to Chase, the interest rate on the debt was 5.99%, and thereafter Chase increased the interest rate in several increments to 29.99%, which Mr. Kendall did not believe Chase had the right to do under his agreement with Providian. Thus, Mr. Kendall had registered his dispute as to interest charges and fees and penalties with Chase prior to filing bankruptcy, but the dispute had never been resolved.

Because he did not know exactly how much of the Chase Debt was principal, interest, fees or penalties, or whether any of the interest, fees or penalties were properly calculated or authorized, Mr. Kendall represented in his schedules that Chase was a creditor in the amount of $13,193.00, the amount stated on the credit report he obtained prior to filing his petition herein.  To indicate that he took issue with the amount of the debt, Mr. Kendall marked the Chase Debt "disputed" on his schedules.  The Court finds that Mr. Kendall's indication on his schedules that the Chase Debt was "disputed" on the petition date was made in good faith.

Mr. Kendall testified that he made his last payment to Chase in September 2006, and thereafter, he repeatedly contacted Chase in an attempt to propose a payment plan.  Mr. Kendall was dismayed that Chase steadfastly refused to accept anything but payment in full. In those conversations with representatives of Chase, Mr. Kendall was not advised that Chase no longer owned or serviced the Chase Debt or that the debt had been sold to B-Line. Significantly, Mr. Kendall's final payment to Chase in September 2006, and his conversations with representatives of Chase, occurred *after* April 24, 2006, the date B-Real alleges Chase sold the Chase Debt to B-Line.

The Court finds that Mr. Kendall presented sufficient evidence to raise substantial questions as to whether the Chase Debt had in fact been transferred to B-Line, and in turn to B-Real, as well as substantial issues concerning the amount owed.

In lieu of testimony, B-Real's counsel made the following offer of proof (the "Offer of Proof"):

> If a witness from B-Real was called to testify, they [sic] would state that the debt from Chase Bank USA was assigned to B-Real LLC; that the bill of sale which is exhibit number 3 which you have, your Honor, and the assignment, which is exhibit number 4, evidence that assignment from Chase Bank to B-Real LLC; and that B-Real LLC filed this proof of claim, shown as exhibit 2, which you have, which evidenced the balance due on the Chase debt.[2]

The Kendalls did not object to the admission of the Offer of Proof, but indicated that they did not concur with the substance of the offer.

## IV.    Conclusions of law

A.    <u>Allowance of claims and burdens of proof.</u>

Section 502(a) of the Bankruptcy Code states that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). With certain exceptions not applicable here, "if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that . . . such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]" 11 U.S.C. § 502(b)(1).

Because the Kendalls filed an objection to B-Real's proof of claim, B-Real's claim is not "deemed allowed" under Section 502(a), and pursuant to Section 502(b)(1), the Court

---

[2]The Offer of Proof did not address the origin or relevance of Exhibit 5, the bWeb Account Summary.

must determine whether the claim is enforceable against Mr. Kendall under the relevant agreements or applicable law, and if so, the amount of the claim.

Bankruptcy Rule 3001 sets forth the procedures under which claims are filed and adjudicated. The procedural rules applicable to this particular case are as follows:

- A creditor must file a written proof of claim setting forth a creditor's claim. "A proof of claim shall conform substantially to the appropriate Official Form." Bankruptcy Rule 3001(a).

- The "appropriate Official Form" is Official Form 10.

- "When a claim . . . is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim." Bankruptcy Rule 3001(c).

- "A proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim." Bankruptcy Rule 3001(f).

If the proof of claim is sufficient to constitute *prima facie* evidence of the validity and amount of the claim, then "[t]he objecting party has the burden of going forward with evidence supporting the objection." Wilson v. Broadband Wireless Int'l Corp. (In re Broadband Wireless Int'l Corp.), 295 B.R. 140, 145 (B.A.P. 10th Cir. 2003)(citation omitted). "Such evidence must be of probative force equal to that of the allegations contained in the proof of claim." Id. "Once the objecting party has reached this threshold, the creditor [claimant] has the ultimate burden of persuasion as to the validity and amount of the claim." Id., *citing* Agricredit Corp. v. Harrison (In re Harrison), 987 F.2d 677, 680 (10th Cir. 1993).

However, if the proof of claim is not "executed and filed in accordance with these rules," the claimant is not entitled to stand on its proof of claim as *prima facie* evidence of the validity and amount of the claim, and the claimant has "the initial burden of proving that a claim exists and the amount of that claim." Broadband, 295 B.R. at 145.[3]

---

[3] The Court concurs with those courts that have held that merely failing to attach written documentation to a proof of claim does not require outright *disallowance* of the claim; non-compliance with Rule 3001(c) and Form 10 instructions simply deprive the claimant of the presumption that its claim is valid in the amount stated. See, e.g., In re Stoecker, 5 F.3d 1022, 1028 (7th Cir. 1993); B-Line, LLC v. Kirkland (In re Kirkland), No. NM-07-021, 2007 WL 4465484 (B.A.P. 10th Cir. Dec. 21, 2007) (Section 502(b) does not authorize disallowance of a claim for failing to comply with the documentation requirements of Bankruptcy Rule 3001); In re Taylor, 363 B.R. 303, 307 (Bankr. M.D. Fla. 2007); In re Burkett, 329 B.R. 820, 828 n.2 (Bankr. S.D. Ohio 2005) ("A majority of courts hold that a failure to attach documents purportedly required by Fed. R. Bankr. P 3001 and Official Form 10 is not, by itself, a basis for disallowance of claim.")(collecting cases).

However, in the face of a valid substantive objection, if the claim is based on a writing that is not attached to the proof of claim, and the presumption of validity does not arise, the claimant is held to the same standard of proof as if the claimant were establishing its claim in a non-bankruptcy forum. See Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15, 19-20 (2000); First City Beaumont v. Durkay (In re Ford), 967 F.2d 1047, 1050 n.6 (5th Cir. 1992); Kirkland, No. NM-07-021, 2007 WL 4465484, at *5 ("In the face of a proper objection, the creditor will have to establish its claim at hearing, bearing whatever burden of proof exists in proving such a claim in a non-bankruptcy arena"); In re Leverett, No. 06-41439, 2007 WL 4260302, at *3 (Bankr. E.D. Tex. Dec. 5, 2007).

In cases in which the debtor has *not* disputed the debt on its schedules, the admission of the debtor is some evidence of the validity and amount of the claim. But where the debt is disputed, the creditor cannot establish a *prima facie* case of breach of a credit card contract without establishing a contract with the debtor, a breach and damages. If the breach of contract claim has been assigned, the claimant also has the burden of establishing its right to assert the claim. See Burkett, 329 B.R. at 829-30 ("if a proof of claim lacking proper attachments does not correlate to a debt scheduled by the debtor, or aspects of the claim differ from the scheduled debt, this may give rise to a valid objection by the debtor . . . for lack of verification of ownership and/or the amount of the claim . . . [A] failure to respond to the objection could lead to disallowance of the claim and, even if the creditor does respond, the creditor will carry the burden of going forward as well as the ultimate burden of proof to establish its claim at the hearing on the substantive objection.").

B. <u>B-Real failed to file the Proof of Claim "in accordance with these rules."</u>

B-Real filed its Proof of Claim on Official Form 10. As Bankruptcy Rule 3001(a) requires the use of Form 10, the rule implicitly requires that Form 10 be completed according to the instructions on Form 10. On its Proof of Claim, B-Real contends that its claim is for credit card debt incurred by Mr. Kendall. However, B-Real did not comply with either Bankruptcy Rule 3001(c) or the instructions contained on Form 10 that require filing with the proof of claim the "writing" upon which the claim is based.

The Court takes judicial notice that the terms of an agreement between a credit card holder and a credit card issuer are set forth in writing,[4] and the governing documents usually include a credit application and a lengthy brochure setting forth the cardholder's and card issuer's rights and obligations, often in finely printed legalese, and sometimes include unilateral modifications to the original agreement which an issuer later mails to the cardholder. Most basically, the card issuer agrees to extend credit to the cardholder each time a cardholder uses the issuer's card, up to a certain aggregate limit, and the cardholder agrees to repay on a monthly basis at least a portion of the funds advanced on behalf of the cardholder (*i.e.*, a "minimum payment"), plus finance charges, which charges include, but are

---

In this case, Mr. Kendall did not list B-Real as a creditor and consistently disputed the amount of the Chase Debt prior to bankruptcy and in his schedules. Thus, the Kendalls properly lodged a substantive objection to B-Real's Proof of Claim. The Kendalls' schedules do not support B-Real's claim of ownership or the validity of the Chase Debt.

[4]<u>In re Taylor</u>, 363 B.R. 303, 307 (Bankr. M.D. Fla. 2007) ("All retail charge accounts constitute claims based on a writing"); <u>eCast Settlement Corp. v. Tran (In re Tran)</u>, 369 B.R. 312, 316 (S.D. Tex. 2007); <u>In re Hughes</u>, 313 B.R. 205, 210 (Bankr. E.D. Mich. 2004); <u>In re Cluff</u>, 313 B.R. 323, 334 and n.32 (Bankr. D. Utah 2004).

not limited to, interest on the unpaid balance. Interest is calculated at certain rates, generally depending on what type of credit was used (*i.e.*, purchase money or cash advance, etc.), and depending on the status of the account (*i.e.*, current, past due, over-limit, etc.) and age of the balances (*e.g.*, "teaser" interest rates may apply for a defined period of time), which interest is accrued and compounded at certain time periods and at certain intervals on certain balances. Some issuers require the payment of annual membership fees. Penalties are generally charged for late payments or for incurring debt in excess of the credit limit. The complexity of the relationship between a cardholder and card issuer requires that all of these variables be agreed to in a writing or writings, and federal law requires that consumer cardholders be given written disclosure of these terms. See 15 U.S.C. § 1637; 12 C.F.R. § 226.5a.

In submitting its Proof of Claim, B-Real did not attach the agreement containing the terms under which the debt was incurred, nor did it explain why it failed to attach such a document (*i.e.*, that it was "lost or destroyed" and the circumstances leading to the loss). The Account Summary that B-Real attached to the Proof of Claim is not the type of writing contemplated by Bankruptcy Rule 3001(c), as it does not set forth the terms of the agreement between Mr. Kendall and B-Real, if any, or the terms of the credit card agreement between Mr. Kendall and Providian and/or Chase that were applicable when the debt was incurred. While a claimant may attach a summary if "the documents are voluminous," the Account Summary does not allege that the relevant documents are voluminous, nor does it explain what document or documents the Account Summary purports to summarize.

    C.    The Proof of Claim is not entitled to *prima facie* evidentiary status under Bankruptcy Rule 3001(f).

Because B-Real did not attach the writing under which the Chase Debt was incurred or an explanation of the circumstances of the loss or destruction of such a writing, it did not execute and file the Proof of Claim in accordance with the applicable rules.[5] Accordingly, B-Real is not entitled to the presumption provided by Bankruptcy Rule 3001(f) that its Proof of Claim is "*prima facie* evidence of the validity and amount of the claim."[6] In the face of the Kendalls' substantive objections to B-Real's ownership of the debt and to the amount of the debt, B-Real had the burden of coming forward with evidence to establish the validity, ownership, and amount of its claim in the same manner as if B-Real were suing the Kendalls on the claim in a non-bankruptcy forum.[7]

---

[5] In addition, B-Real did not attach a statement itemizing the debt into principal, interest and additional charges as required by paragraph 5 of Official Form 10.

[6] See Stoecker, 5 F.3d at 1028 ("If the documentation is missing, the creditor cannot rest on the proof of claim"); Tran, 369 B.R. at 316-17 (credit card creditor's claim is based on a writing, and failing to submit the writing or, in lieu thereof, a description of the circumstances of its loss, deprives proof of claim of *prima facie* evidentiary value); In re Parrish, 326 B.R. 708, 719 (Bankr. N.D. Ohio 2005); Cluff, 313 B.R. at 337.

[7] Except where bankruptcy law dictates a different result, claims resolution carries the same burdens of proof and persuasion "had the proceedings taken place outside of bankruptcy." Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15, 19-20 (2000). "Given its importance to the outcome of cases, we have long held the burden of proof to be a 'substantive' aspect of a claim. . . . That is, the burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it." Id. at 20-21 (citations omitted). See also First City Beaumont v. Durkay (In re Ford), 967 F.2d 1047, 1050 n.6 (5th Cir. 1992) ("The legal standards for measuring the value of a bankruptcy claim for contract breach are. . . the same as those which would be applied if the bankruptcy had not occurred"), quoting In re Continental Airlines Corp., 64 B.R. 865, 871 (Bankr. S.D. Tex. 1986); Kirkland, No. NM-07-021, 2007 WL 465484, at *5.

D.      B-Real failed to establish a chain of title of the Chase Debt.

"To have an allowed proof of claim, the claimant must prove an initial fact: that it is the creditor to whom the debt is owed or, alternatively, that it is the authorized agent of the creditor." In re Parrish, 326 B.R. 708, 719 (Bankr. N.D. Ohio 2005).[8]  B-Real contends that the Chase Debt was transferred by Chase to B-Line on or about April 24, 2006, and was transferred from B-Line to B-Real on or about May 23, 2007.  The Bill of Sale is insufficient to establish that the Chase Debt was transferred to B-Line.  The Bill of Sale does not identify the Chase Debt as one of the 2,875 accounts transferred, and B-Real failed to present any credible evidence at the hearing that the Chase Debt was in fact transferred to B-Line.  Mr. Kendall testified that he made a payment to Chase in September 2006 and communicated with Chase about a payment plan in October and November 2006, and in neither event did Chase advise Mr. Kendall that Chase had sold the Chase Debt to B-Line in April 2006.  These facts are sufficient to rebut B-Real's contention that the Chase Debt was sold to B-Line by virtue of the Bill of Sale.  Even if B-Real could establish that the Chase Debt had been sold to B-Line by virtue of the Bill of Sale, the Assignment fails to demonstrate that the Chase Debt was included in the mass of receivables that was transferred by B-Line to B-Real.

In addition, B-Real's Offer of Proof was inadequate to establish a chain of title of the Chase Debt between Chase and B-Real.  B-Real failed to identify a witness who could have testified as stated in the Offer of Proof or the capacity of such a witness, and failed to establish

---

[8]See also In re Long, 353 B.R. 1, 16-17 (Bankr. D. Mass. 2006) (claim was disallowed when documents purporting to prove claimant's ownership of note and mortgage revealed gaps in the chain of title); Burkett, 329 B.R. at 830 and n.6.

14

how such a witness would know that the Chase Debt was included in the Bill of Sale and/or the Assignment, or why B-Real did not or could not submit full and complete copies of the Bill of Sale and Assignment that contained descriptions of the accounts and receivables assigned. In light of the unexplained absence of written evidence of the particular accounts and receivables assigned by Chase to B-Line and from B-Line to B-Real (*i.e.*, Exhibit 1 that was referred to in the Bill of Sale, and Schedule A that was referred to in the Assignment),[9] B-Real's Offer of Proof falls short of convincing the Court that the Chase Debt was in fact transferred to B-Real.[10] Something more than an unnamed and unavailable witness's unsworn

---

[9] The Best Evidence Rule appears to be applicable here. "To prove the content of a writing, . . .the original writing is required, except as otherwise provided in these rules or by Act of Congress." Fed. R. Evid. 1002. The Federal Rules generally permit admission of duplicates of an original document (Fed. R. Evid. 1003) or other evidence of the content of a document (*i.e.*, testimony) if the originals were lost or destroyed, were not obtainable by judicial process, or were in the possession of the party opponent, or if the writing is not "closely related to a controlling issue." Fed. R. Evid. 1004. An admission by a party opponent may prove the content of a writing "without accounting for the nonproduction of the original." Fed. R. Evid. 1007. Summaries of voluminous records are admissible only if the original or duplicate copies of the documents summarized are made available to other parties and to the court. Fed. R. Evid. 1007.

B-Real attempted to prove the content of the incomplete copies of the Bill of Sale and Assignment that were admitted as Exhibits 3 and 4 through an Offer of Proof consisting of testimony of an unnamed witness, who would have testified that the Chase Debt was conveyed by virtue of the Bill of Sale and Assignment. The Kendalls did not possess the missing documents, nor did they admit that the Chase Debt had been assigned. B-Real did not present any evidence as to why a complete copy of the documents containing the identity of accounts conveyed was unavailable. The conclusory testimony presented in the Offer of Proof is inadmissible to prove the content of the crucial missing portions of the conveyance documents.

[10] The Court respectfully disagrees with In re Hughes, 313 B.R. 205 (Bankr. E.D. Mich. 2004), in which the court concluded that a blanket assignment which failed to identify the debtor's account was sufficient to prove the assignee's ownership of the claim simply because the debt claimed by the purported assignee matched a debt scheduled by the debtor. Id. at 212. The court stated that "[t]o require the assignee of credit card debt to produce

15

representations to counsel is required to establish that such a transfer occurred.[11]   The fact that neither Chase nor any other entity filed a proof of claim seeking distribution for the Chase Debt does not establish that the debt was assigned to B-Real.

---

voluminous account information for every claim imposes an unnecessary burden on creditors without conferring any necessary benefit on Debtors," and held that a signed copy of the assignment plus "sufficient information to identify the original credit card account" was sufficient to satisfy the requirement of Bankruptcy Rule 3001.  Id.

This Court concludes that the submission of an assignment of numerous accounts that fails to identify which accounts were assigned is not sufficient evidence of the assignment of any particular account.  Nor is an incomplete copy of the assignment coupled with an account summary of the type submitted by B-Real herein, which contains information that the claimant could obtain even in absence of an assignment, sufficient to prove the conveyance of a particular account when the accounts transferred are in fact identified in an exhibit to the assignment.

[11]B-Real contends that because the Chase Debt was assigned prior to the filing of the Proof of Claim, it need not prove its ownership of the claim because Bankruptcy Rule 3001(e)(1) does not require evidence of the assignment.  Bankruptcy Rule 3001(e)(1) states "[i]f a claim has been transferred other than for security before proof of the claim has been filed, the proof of claim may be filed only by the transferee or an indenture trustee." The Court concludes that this rule simply determines *who* is entitled to file a claim that was transferred prior to the filing a proof of that claim, not what evidence a transferee must ultimately present to prove its ownership of the claim, and therefore respectfully disagrees with courts that have held that Bankruptcy Rule 3001(e)(1) excuses an assignee from proving that it owns an assigned claim for allowance purposes.  See, e.g., In re Griffin, No. 06-11130-FM, 2007 WL 1467145 (Bankr. W.D. Tex. May 17, 2007), attached to B-Real's Supplemental Brief as Exhibit D.

B-Real also cites Resurgent Capital Serv. v. Burnett (In re Burnett), 306 B.R. 313 (B.A.P. 9th Cir. 2004), aff'd 435 F.3d 971 (9th Cir. 2006), for the proposition that Bankruptcy Rule 3001(e)(1) does not require an assignee of a claim to introduce evidence of the assignment in order to establish its claim.  Supplemental Brief at 13.  However, in Burnett, the panel concluded that an assignee was not required to disclose the *consideration* exchanged for the transfer in order to establish the validity of its claim.  Id. at 319.  It did not address whether the assignee was required to provide sufficient evidence that the transfer occurred in order to overcome an objection to the claim, because the assignee in that case did in fact provide to the objectors satisfactory evidence that the claim was in fact transferred. Id.

E.  B-Real failed to establish the validity and amount of the debt.

To prevail in collecting a debt based upon a breach of contract, the claimant must establish the formation of an agreement, establish a breach or default under the agreement, and quantify the damages. See Digital Design Group, Inc. v. Information Builders, Inc., 2001 OK 21, 24 P.3d 834, 843, *citing* Oklahoma Uniform Jury Instructions, Civil, Inst. 23.1. See also Leverett, 2007 WL 4260302, at *6 (applying Texas law). In the absence of a Rule 3001(f) presumption, the burden of proving these elements is on the claimant; until the claimant has established its *prima facie* case with admissible evidence, the debtor is not required to disprove the validity or amount of the debt. See In re eCast Settlement Corp. v. Tran (In re Tran), 369 B.R. 312, 318 (S.D. Tex. 2007); In re Long, 353 B.R. 1, 14 (Bankr. D. Mass. 2006) (in absence of the presumption, the debtor "bears no initial burden of rebuttal, and the burden of proof rests from the start on [the claimant]").

Assuming without deciding that the Proof of Claim, the Offer of Proof, and the exhibits were sufficient to establish the formation of a credit card agreement, a breach of the agreement, and damages,[12] Mr. Kendall's credible testimony was sufficient to dispute the

---

[12] In its briefs, B-Real argues that if the objector complains only that the claimant failed to comply with Bankruptcy Rule 3001(c)'s requirement for documentation, and does not raise any substantive objection to the amount of validity of the claim, the proof of claim itself, whether or not supported by documents, is sufficient evidence to meet a claimant's initial burden of production, thus placing on the objector the burden of producing evidence to disprove the claim. For this proposition, B-Real cites numerous cases in various circuits. Supplemental Brief at 3-12.

After B-Real filed its Supplemental Brief, the Bankruptcy Appellate Panel of the Tenth Circuit squarely addressed the issue of whether a deficient proof of claim is itself evidence of the validity and amount of a claim sufficient to shift the burden to the objector. See B-Line, LLC v. Kirkland (In re Kirkland), No. NM-07-021, 2007 WL 4465484 (B.A.P. 10th Cir. Dec. 21, 2007). In Kirkland, the creditor filed a proof of claim for a debt that had

17

validity and amount of the debt.  Mr. Kendall testified that the increases in the interest rate and the imposition of penalties were unauthorized under the agreement, and therefore the amount of the debt was inflated.  The Court concludes that Mr. Kendall's testimony shifted to B-Real the burden of persuading the Court that the Chase Debt was enforceable in the amount of $13,193.00.  Because B-Real did not produce the written agreement from which the Court could determine whether Chase had the contractual right to increase the rate of

---

been scheduled by a Chapter 13 debtor as undisputed.  The creditor did not attach to the proof of claim the documentation required by Bankruptcy Rule 3001(c).  Several years later, the case was converted to one under Chapter 7, and the Chapter 7 trustee objected to the proof of claim on the ground that the proof of claim was not supported by the documentation required by Bankruptcy Rule 3001(c).  The trustee argued that without documentation, he was unable to determine whether the claim was valid.  The Bankruptcy Appellate Panel concluded that the proof of claim, together with the schedules that established that the debtor did not challenge the amount or validity of the claim, was sufficient evidence of a valid claim, and because the trustee failed to present *any* countervailing evidence, the court was not authorized under Section 502(b) to disallow the claim merely because the creditor failed to comply with Bankruptcy Rule 3001(c).

Because the Kendalls challenged B-Real's claim for reasons other than that the Proof of Claim failed to include the required documents, the Court need not decide whether B-Real's Proof of Claim contained enough evidence to meet its initial burden of production.  Regardless of whether B-Real met its initial burden, the Kendalls offered credible testimony in support of their objection to the validity and amount of the claim, which shifted to B-Real the ultimate burden of establishing its claim.  See, e.g., In re Cluff, 313 B.R. 323, 338 (Bankr. D. Utah 2004) ("In order to defeat a claim that contains some evidence, but that is not accorded *prima facie* status, a debtor could make an allegation supported by a signed affidavit, that some or all of the [] claim was not owed or that the debt had been satisfied.  If the creditor did nothing more, such an objection could be sustained."), *aff'd* No. 04-CV-978 TS, 2006 WL 2820005 (D. Utah Sept. 29, 2006).  See also Campbell v. Verizon Wireless S-CA (In re Campbell), 336 B.R. 430, 436 (B.A.P. 9th Cir. 2005) ("a creditor that files a proof of claim that lacks sufficient support under Rule 3001(c) and (f) does so at its own risk. That proof of claim will lack *prima facie* validity, so any objection that raises a legal or factual ground to disallow the claim will likely prevail absent an adequate response by the creditor"); Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation), 318 B.R. 147, 152 (B.A.P. 8th Cir. 2004) (if the debtor had presented *any* evidence supporting its objections to claims, "the ultimate burden of persuasion would have shifted to the Claimant to establish its entitlement to the claims").

18

interest in the manner it did, or any testimony explaining the basis for imposing various interest rates on Mr. Kendall's balances and how the interest charges were calculated, B-Real failed to establish that interest charges and penalties were authorized.  Further, because B-Real did not provide *any* evidence allocating the claim into components of principal, interest, fees and penalties, either in its Proof of Claim (as was required by paragraph 5 of Official Form 10) or at trial, nor a historical accounting of transactions and payments, the Court cannot even determine the uncontroverted part of the debt.

## V.    Conclusion

Because B-Real has not met its ultimate burden of proving the validity or amount of the debt, or its ownership of the debt, B-Real has failed to prove that its claim is enforceable against Mr. Kendall or his property, and therefore the Kendalls' objection should be sustained and the claim disallowed under 11 U.S.C. § 502(b)(1).

**SO ORDERED** this 27th day of December, 2007.

DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT